# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**CALEB SKYLER FREEMAN**                                              **PLAINTIFF**

**V.**                                                              **CAUSE NO. 3:17-CV-1016-CWR-LRA**

**BRADLEY SMITH**, *in his Official Capacity*                        **DEFENDANTS**
*as an Investigator for the Rankin County*
*Sheriff, and in his Individual Capacity*;
**JOHN DOES 1-10**, *who are Rankin County*
*Deputies and/or Investigators whose names*
*and identities are unknown at this time*

## ORDER

Before the Court is the defendant's motion for judgment on the pleadings.[1] The matter is fully briefed and ready for review.

**I.    Factual and Procedural History**

The following allegations are drawn from the plaintiff's amended complaint and the state court hearing transcript he "incorporated" into his amended complaint. The allegations are taken as true for present purposes.

On September 26, 2017, Rankin County Sheriff's Investigator Bradley Smith and his colleagues "apprehended" Caleb Skyler Freeman's roommate as the roommate attempted to sell marijuana. The roommate told them that Freeman had more marijuana at their rental home in Brandon, Mississippi.

Investigator Smith and his fellow officers went to the home in marked cars. Investigator Smith knocked on the door. He heard whispering and movement, but no one answered. He opened the unlocked door and walked in to find Freeman by the door and two other individuals on the couch. There were marijuana bongs and pipes on the table in the living room.

---

[1] The defendant's unopposed motion for additional time to file his reply is granted nunc pro tunc.

The officers swept the home looking for other individuals, then returned to speak with the occupants. Investigator Smith took Freeman outside and explained why he was there. Freeman admitted to having "two or three ounces" of marijuana inside, but declined to let the officers search, saying he wanted to speak with his lawyer. Investigator Smith took Freeman back inside and called the Sheriff's Office's attorney to apply for a search warrant. Freeman was handcuffed. When the search warrant arrived, the ensuing search unearthed five ounces of marijuana, cash, an AR-15-type firearm, and drug paraphernalia in Freeman's bedroom.

Freeman was charged with possession with intent to distribute approximately five ounces of marijuana. He was released on bond.[2]

Freeman filed this suit in this Court on December 14, 2017. He says Investigator Smith violated his constitutional rights by entering his home without a warrant, arresting him without probable cause or a warrant, "interrogating" him without giving a *Miranda* warning and in disregard of Freeman's request to speak with a lawyer, and detaining him at the Rankin County Jail "by using a void arrest warrant." The claims are brought against Investigator Smith in his individual and official capacities. Freeman also seeks damages under several state tort theories.

Investigator Smith answered the amended complaint and filed the present motion four days later. He contends that Freeman has failed to state a claim and invokes the defense of qualified immunity.

## II. Legal Standards

### A. Judgment on the Pleadings

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).

---

[2] It is not clear how the state charges were resolved.

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quotation marks and citations omitted).

### B. Qualified Immunity

"Qualified immunity shields government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) (quotation marks and citation omitted). "More precisely, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." *Id.* (quotation marks, citation, and brackets omitted).

At this stage, a qualified immunity analysis requires the Court to decide "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 579 (citations omitted). These elements may be taken up in any order.

### III. Discussion

As an initial matter, Freeman complains that the present motion is "not timely" because "a motion for judgment on the pleadings is a motion that the court should consider later in the case." Freeman misunderstands Rule 12(c). It plainly states that a party may answer the complaint and immediately move for judgment on the pleadings. In fact, the Rule *encourages*

3

such sequencing in stating that 12(c) motions should be filed "early enough not to delay trial." The argument simply lacks merit.

We begin with the constitutional claims brought under 42 U.S.C. § 1983.

**A.     Unlawful Entry**

Police officers may enter a home without a warrant only in exigent circumstances. One of those exigent circumstances arises when the police "need to prevent the imminent destruction of evidence." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quotation marks and citations omitted). "Destruction of evidence issues probably occur most frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain." *Id.* at 461.

"Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency." *Id.* at 470. This "requires a court to examine whether an emergency justified a warrantless search in each particular case." *Riley v. California*, 134 S. Ct. 2473, 2494 (2014) (citation omitted). The inquiry is fact-specific and ultimately depends on the "totality of the circumstances." *Missouri v. McNeely*, 569 U.S. 141, 150 (2013) (collecting cases).

Police officers "may not rely on the need to prevent destruction of evidence when that exigency was 'created' or 'manufactured' by the conduct of the police." *King*, 563 U.S. at 461 (citations omitted); *see also United States v. Rico*, 51 F.3d 495, 503 (5th Cir. 1995) (collecting cases). But the police-created-exigency doctrine is limited to situations where the police are "engaging or threatening to engage in conduct that violates the Fourth Amendment." *King*, 563 U.S. at 462.

Exigent circumstances are traditionally determined by looking at the following factors:

(1)     the degree of urgency involved and amount of time necessary to obtain a warrant;
(2)     the reasonable belief that contraband is about to be removed;

> (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought;
> (4) information indicating the possessors of the contraband are aware that the police are on their trail; and
> (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*Rico*, 51 F.3d at 501 (citations and brackets omitted). In the suppression context, the Fifth Circuit has indicated a preference for the trial court to hear evidence over proffers from counsel. *Id.* at 503. Determining the reasonableness of an officer's belief in exigent circumstances is a close call as it is, and is made worse when the facts "are not as well developed as they should be to facilitate appellate review." *Id.* at 504.

We turn to the present case. Freeman's allegations are taken directly from Investigator Smith's state-court testimony. In that proceeding, Investigator Smith said the following: "We then went to the residence, knocked on the door. Nobody answered the door. We did hear somebody moving around inside and some whispering. I tried the door knob and it was unlocked. Opened the door. Mr. Freeman was standing right at the door and two other individuals were sitting on the couch."

Given this testimony, and in the absence of any additional factual development, it would be premature to conclude that Investigator Smith is entitled to qualified immunity.

First, "[t]here is no question that the constitutional right in question—the freedom from warrantless searches and seizures within the home—is clearly established." *Harris v. Canulette*, 997 F.2d 881, at *2 (5th Cir. 1993) (denying qualified immunity).

Second, the fact that Investigator Smith heard "some whispering" and "somebody moving around" does not in and of itself suggest the destruction of evidence or otherwise qualify as an exigent circumstance. It is the kind of speculation about exigency that the Fifth Circuit has

specifically cautioned trial courts to be careful about accepting: "Were we to accept the premise that, without more, exigent circumstances exist any time that a police officer is simply not familiar with the suspects, *or merely speculates that they might flee or destroy evidence or repeat the crime*, we would in effect eviscerate the Fourth Amendment's warrant requirement for searches and seizures within the home." *Id.* at *3 (emphasis added); *see also United States v. Menchaca-Castruita*, 587 F.3d 283, 295–96 (5th Cir. 2009) ("A finding of exigent circumstances . . . must be based on more than a mere possibility; it must be based on an officer's reasonable belief that the delay necessary to obtain a warrant will facilitate the destruction or removal of evidence or put officers or bystanders in danger.").

There are many cases in which the evidence of exigency will reveal the officer's entitlement to qualified immunity. *E.g.*, *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004) (granting qualified immunity, and rejecting claims of manufactured exigency, where officer "thought he heard the sound of a pump shotgun" as he stood at the plaintiff's door). We just have insufficient evidence to make that conclusion at this juncture. This claim may proceed.

**B. Other Constitutional Claims**

Freeman's response brief has abandoned his Fifth, Sixth, and Fourteenth Amendment theories, as well as his official-capacity claims. They need not be considered further. *See United States ex rel. Woods v. SouthernCare, Inc.*, No. 3:09-CV-313, 2013 WL 1339375, at *7 (S.D. Miss. Mar. 30, 2013).

We are left with Freeman's claims of unlawful arrest. On review, the Court sees no basis for these claims to move forward.

Probable cause is "a showing of the probability of criminal activity." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quotation marks and citations omitted). The standard

"requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *Id.* A proper showing of probable cause requires "more than mere suspicion" but less than "proof beyond a reasonable doubt." *Id.*

The allegations in the amended complaint show that Investigator Smith had probable cause to detain Freeman, apply for a search warrant, and arrest Freeman for drug crimes. Investigator Smith saw drug paraphernalia in plain view upon entering the home. Freeman then admitted—before requesting an attorney—that he had marijuana in the home. It is a crime to possess marijuana. Miss. Code Ann. § 41-29-139(c). Investigator Smith prudently stopped questioning Freeman, and delayed any search, when Freeman did request an attorney and declined to consent to a search. It was only after receiving a search warrant that Investigator Smith and his colleagues searched for and located the ounces of marijuana.

Freeman claims that the search warrant was invalid because the judge's signature was stamped, rather than physically signed, and because telephone search warrants are prohibited by the Mississippi Supreme Court. But signature stamps are a common feature of a judge's chambers (although not the undersigned's), and Freeman has pointed to no authority indicating that Investigator Smith can be subjected to § 1983 liability because the state court issued a warrant with a stamp instead of a pen. Assuming that Freeman would have had a state-law remedy on direct appeal does not mean he has a viable theory of civil liability under § 1983.[3]

Freeman also says that false statements in Investigator Smith's warrant application subject him to liability. He is correct that the law provides for that kind of relief. *See Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (constitutional violation when attesting officer's "warrant

---

[3] In addition, the documents show that the warrant application was presented to the judge in person by Lt. James Rayborn, rather than telephonically by Investigator Smith.

application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable."); *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (constitutional violation when officer "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause"); *see also Melton v. Phillips*, 875 F.3d 256, 266 (5th Cir. 2017) (en banc) (Costa, J., concurring) (describing the different strands of liability). In this case, however, Freeman has not pointed to any deficiencies in the warrant application or ensuing warrant that show an absence of probable cause. These claims cannot move forward.

### C. State-Law Tort Claims

Freeman contends that his state tort claims—battery, false imprisonment, and intentional infliction of emotional distress—survive because he has alleged that Investigator Smith acted with malice. But he has not responded to the authorities, advanced by Investigator Smith, holding that the existence of probable cause itself precludes these state torts. *E.g.*, *Richard v. Supervalu, Inc.*, 974 So. 2d 944, 949 (Miss. Ct. App. 2008) (probable cause defeats false imprisonment and IIED claims). As a result, they must be dismissed.

## IV. Conclusion

The motion for judgment on the pleadings is granted in part and denied in part. This case shall proceed on the unlawful entry claim brought against Investigator Smith in his individual capacity.

Within 10 days the parties shall contact the chambers of the Magistrate Judge for the entry of a scheduling order.

**SO ORDERED**, this the 28th day of September, 2018.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE